## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM TRICKETT SMITH, II,** | : | **No. 3:09cv1796** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MICHAEL J. REGAN, UNITED** | : | |
| **STATES MARSHAL, MIDDLE** | : | |
| **DISTRICT OF PENNSYLVANIA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Before the court is a Petition for Writ of Habeas Corpus (Doc. 1) filed by Petitioner William Trickett Smith, II ("Smith"), pursuant to 28 U.S.C. § 2241. The government filed its response on October 1, 2009. The petitioner submitted his traverse on October 16, 2009, and the petition is thus ripe for disposition.

## I. BACKGROUND

Petitioner Smith is a United States citizen presently in the custody of the Commonwealth of Pennsylvania at the Perry County Prison pursuant to the underlying extradition request. (Petitioner's Reply (Doc. 6 at 1)). Petitioner's wife, Jana Claudia Gomez de Smith ("Jana Claudia"), was found dead inside a suitcase discovered on La Cascada Beach, District of Barranco, Peru, on August 16, 2007.[1] (August 26, 2008 Extradition Request (Petitioner's Ex. at 91 to 92)).

On June 18, 2008, Elmer Rios Luque, Provincial Prosecutor of the Tenth Criminal Prosecutor's Office–Lima, Peru, pressed criminal charges against Smith "for crimes against the person and health - parricide" for the murder petitioner's wife. Pursuant to those charges, on July 24, 2008,

---

[1] Jana Claudia Gomez de Smith is also referred to, in the extradition request, as Jana Claudia Gomez de Menendez, apparently her maiden name.

Judge Blanca Epifania Mazuelo Bohorquez of the Twenty-second Criminal Court–Lima, of the Court of Appeals–Lima, ordered an investigation be opened against Smith including a warrant for his arrest to appear before the court. (July 24, 2008 Order to Open Investigation, Petitioner's Ex. at 32 to 89 (Doc. 6-2 at 36 to Doc. 6-3 at 45)). That court produced an extradition request for Smith pursuant to the Extradition Treaty between the United States of America and the Republic of Peru (the "Treaty") to try him for the crime of parricide. (August 26, 2008 Extradition Request, Petitioner's Ex. at 90 to 102 (Doc. 6-4 at 1 to 13); the Treaty, Petitioner's Ex. at 103 to 115 (Doc. 6-4 at 14 to 26)). On September 22, 2008, the Supreme Court, Standing Criminal Division (of Peru), resolved that the extradition request was properly filed and ordered the remittal of the record to the Ministry of Justice. On November 4, 2008, Judge Victor Vicente Santander Salvador, of the Twenty-second Criminal Court–Lima, of the Court of Appeals–Lima, issued a Request for Preventive Arrest with the Purpose of Extradition. (Case No. 1:09mc107 (Doc. 1-2 at 10)). On November 10, 2008, by Supreme Resolution No. 178-2008-JUS, the Peruvian Government agreed with the extradition request and ordered it remitted to the United States government through diplomatic channels, which it was on November 18, 2008. (November 18, 2008 Diplomatic Note No. 5-3M/243, Case No. 1:09mc107 (Doc. 1-2 at 2)).

On March 30, 2009 the United States filed a complaint in this court seeking certification that Smith was extraditable. (Compl., Case No. 1:09mc107 (Doc. 1)). On June 10 and July 14, 2009, being in possession of volumes of Peruvian investigational, legal, and procedural documentation, along with their translations and diplomatic certifications, Magistrate Judge J. Andrew Smyser conducted an extradition hearing pursuant to 18 U.S.C. § 3184. (Extradition Hr'g Trs., Case No. 1:09mc107

2

(Docs. 24, 34)). Based upon the documentary evidence, briefing, and oral argument, Judge Smyser certified to the Secretary of State that Smith was extraditable. (Extradition Certification, Case No. 1:09mc107 (Doc. 33)). On September 17, 2009, Smith filed the instant petition for a writ of habeas corpus. (Doc. 1).

## II. JURISDICTION

This court has jurisdiction over this case, pursuant to 28 U.S.C. § 2241. See Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006) ("An individual challenging a court's extradition order may not appeal directly, because the order does not constitute a final decision under 28 U.S.C. § 1291, but may petition for a writ of habeas corpus.").

## III. STANDARD OF REVIEW

The scope of a habeas corpus review of a magistrate judge's extradition order is extremely limited. See Sidali v. INS, 107 F.3d 191 (3d Cir. 1997). "'[H]abeas corpus is available only to inquire whether the magistrate [judge] had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" Sidali, 107 F.3d at 195-96 (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)). See also Hoxha, 465 F.3d at 560. However, courts in other circuits have noted that "[h]abeas corpus review has also been expanded to include examination of procedural defects in the extradition process that are of constitutional magnitude." Ahmad v. Wigen, 726 F. Supp. 389, 396 (E.D.N.Y. 1989). Finally, questions of law are given *de novo* review by the habeas court, whereas question of fact are governed by a clearly erroneous standard. See, e.g., Quinn v. Robinson, 783 F.2d 776, 790-91 (9th Cir. 1986).

## IV. DISCUSSION

The court notes, preliminarily, that Smith does not argue that the magistrate judge lacked jurisdiction, nor that the crime of parricide is outside the Treaty's ambit. In the interest of completeness, however, we will address these two issues. First, the magistrate judge did, in fact, have jurisdiction over the government's extradition request under 18 U.S.C. § 3184 and the Extradition Treaty Between the United States and the Republic of Peru of July 26, 2001 ("the Treaty"). Likewise, the Treaty does extend to the crime of parricide. Article II of the Treaty deems extraditable any offense that the laws of both Peru and the United States make punishable by imprisonment for a term longer than one year. (The Treaty, Article II, Part 1, Petitioner's Ex. at 105 (Doc. 6-4 at 16)). Here, both countries criminalize the murder of one's spouse and make it punishable by a term longer than one year.[2]

Under the constricted scope of review available to this court, we are therefore left to consider only "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Sidali, 107 F.3d at 195-96 (internal quotations omitted). A magistrate judge conducting an extradition hearing applies a probable cause standard identical to that applied in federal preliminary hearings. Sidali, 107 F.3d at 199. Thus, in assessing probable cause in an extradition hearing, the magistrate judge is only required "to determine whether there is competent

---

[2] Article 107 of the Criminal Code of Peru criminalizes parricide: "Anyone who knowingly kills his/her either natural or adopted ancestor, descendant, or his/her spouse or common-law wife/husband shall be restrained with imprisonment for not less than fifteen years." (Article 107, Petitioner's Ex. at 13 (Doc. 6-2 at 17)). Similarly the United States punishes murder by a term of years, life imprisonment, or death. 18 U.S.C. § 1111; see also Federal Sentencing Guidelines, §§ 2A1.1, 2A1.2.

evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.'" Hoxha, 465 F.3d at 561 (quoting Sidali, 107 F.3d at 199).

First, Smith argues, citing Article VI, Part 3(c) of the Treaty, that the government's extradition request is not supported by evidence that would be sufficient to justify the committal for trial of the person if the offense had been committed in the United States.  (Pet. at ¶ 16(a) (Doc. 1 at 3); Petitioner's Reply at 7 (Doc. 6 at 7)).  Second, Smith contends that the government's extradition request fails to produce evidence sufficient to sustain the charge of parricide, as required by 18 U.S.C. § 3184.  (Pet. at ¶ 16(b) (doc. 1 at 3); Petitioner's Reply at 7 (Doc. 6 at 7)).  These arguments collapse into a single inquiry, which we will presently address– whether or not the record contains sufficient evidence for a probable cause determination that Smith committed parricide.

Here, there was certainly "competent evidence to justify holding the accused to await trial." Hoxha, 465 F.3d at 561.  The court reiterates that the evidence, at this stage, need not prove guilt beyond a reasonable doubt.  A sampling of the evidence is as follows: Clara Patricia Menendez Leon, the mother of Jana Claudia Gomez de Smith (the victim), stated[3] that her daughter left Trujillo for Lima on July 3 or 4, 2007 at Smith's behest, and that she did not hear from her daughter again.  (Order at 73; Request

---

[3] Each of the declarations enclosed in the extradition request were made under oath to Peruvian investigators.  The court has examined the text of these interviews in their entirety.  For simplicity's sake, we will cite to the July 24, 2008 Order to Open Investigation (Petitioner's Ex. at 32 to 89 (Doc. 6-2 at 36 to Doc. 6-3 at 45)) ("Order") and the August 26, 2008 Extradition Request (Petitioner's Ex. at 90 to 102) ("Request"), which accurately summarize the evidence supporting a probable cause determination that Smith committed the offense charged.

at 93).   According to the victim's aunt, Maria Cecilia Menendez Leon, Smith called from the United States between July 9 and 12, 2007 (Request at 93), asking where Jana Claudia was and denying that he had been in Peru or that he had asked Jana Claudia to meet him in Lima (Order at 74). In fact, travel reports indicate that Smith was in Peru between July 4 and July 8, 2007.  (Request at 94).  Both women related that Jana Claudia had told them that Smith had been violent with Jana Claudia in the past, including an episode where Jana Claudia had pretended to lose consciousness so that Smith would cease choking her.  (Order at 35, 36).

Two security guards at the San Remo Hotel in Lima, Oscar Jose Ruiz Gomez and Hans Vladimir Acero Reyes recognized Smith and Jana Claudia and recall that the couple stayed at the hotel between July 5 and 8, 2007.  (Order at 74 to 75).  Two receptionists also recognize Smith as having stayed at the San Remo Hotel during this period, with Jana Claudia. (Id.)   The guards both recall seeing Smith carrying a large suitcase during his stay and have identified it as the same suitcase in which Jana Claudia's body was found on La Cascada Beach in Lima on August 16, 2007.  (Id. at 77).  Reyes recalls Smith leaving the San Remo Hotel alone with the suitcase on July 8, 2008.  (Id. at 75).

Co-Defendant Justo Jose Servignon Solano, a fisherman and boat-tour operator, stated that on July 8, 2007 he took Smith and Co-Defendant Monica Cecilia Muñoz Pereda on a boat trip during which Smith threw a weighted suitcase overboard.  (Order at 78, 79).  Solano later recognized the suitcase found containing Jana Claudia's body as the one Smith weighted and threw from the boat.  (Id.)  The victim's mother, Clara Patricia Menendez Leon recognized the suitcase in which her daughter's body was found as that carried by Smith on previous visits to Trujillo.  (Id. at 78).  Co-defendant Monica Cecilia Muñoz Pereda recognized the suitcase in which

6

Jana Claudia's body was found as that owned by Smith and thrown overboard by him   (Id. at 76 to 78).

Smith argues that this evidence is not sufficient for a probable cause determination that he murdered Jana Claudia, only for a determination that he abused a corpse.  (Petitioner's Reply at 10 (Doc. 6)).  That argument might have merit if there were conclusive proof that someone other than Smith murdered Jana Claudia, but that is very much not the case here. Petitioner is certainly free to argue that the Peruvian government has not proved beyond a reasonable doubt that he intentionally killed his wife with premeditation, but not at this stage.  Here, the magistrate judge properly found sufficient evidence to make a probable cause determination that Smith was guilty of the offense charged.

Smith makes two other preliminary arguments based on the documents supporting the government's extradition request– taking issue with the translation and certification of the Peruvian government's supporting materials.  Smith objects that the government's extradition request is not supported by an English translation of all the documents submitted by Peru, contrary to the requirements of Article VII, Part 1 of the Treaty.  (Pet. at ¶ 16(c) (Doc. 1 at 3)).  The court does not find this purported procedural defect to be of constitutional magnitude, nor interpret the Treaty itself to require translation of every sheet within such a voluminous submission.  See, e.g., Ahmad v. Wigen, 726 F. Supp. 389, 396 (E.D.N.Y. 1989) ("Habeas corpus review has also been expanded to include examination of procedural defects in the extradition process that are of constitutional magnitude").  As set forth above, the magistrate judge had more than enough documentation, in English, to make a probable cause determination.

Similarly, the court is not persuaded that the Department of State's

certification of the extradition request was lacking. Article VII, Part 2(a) and 18 U.S.C. § 3190 allow documentation that is sent in support of an extradition request to be entered as evidence in an extradition hearing so long as that documentation has been authenticated. Section 3190 states that the certificate of "the principal diplomatic or consular officer of the United States resident in such foreign country" will stand as proof that the supporting documentation has been properly authenticated. The supporting documentation in this case was sent in two spiral bound volumes– one volume in Spanish, another translated into English. Attached to the English volume is the certificate of Charisse Phillips, Counselor for Consular Affairs, dated January 13, 2009. The certification states:

> annexed papers, being copies of formal charges and evidence and the English translation thereof to be used upon an application for Extradition from the United States of America of WILLIAM TRICKETT SMITH II . . . are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Peru, as required by [section 3190].

(Certificate of Charisse Phillips, Petitioner's Ex. at 118 (Doc. 6-4 at 29)). Enclosed with the entire submission was the declaration of Jennifer Landsidle, State Department Attorney-Adviser, which recited that all extradition formalities had been complied with, including that Charisse Phillips was "the principal consular officer of the United States in Peru," at the time of certification. (Landsidle Declaration of February 18, 2009, Petitioner's Ex. at 119 (Doc. 6-4 at 32)).

A post-hoc certification of the Spanish volume by Sarah J. Francis, Consul, dated July 7, 2009 is substantially the same as that by Phillips. (Certificate of Sarah J. Francis, Petitioner's Ex. at 124 (Doc. 6-4 at 35)). This later certification was provided upon petitioner's argument, prior to his extradition hearing, that each volume in the Peruvian submission required

a separate authentication according to the Foreign Affairs Manual. (See Smith's Brief in Opposition, Case No. 1:09mc107 (Doc. 18)).

Smith now argues that Francis' July 7 certificate is insufficient because there is no indication that she was the principal consular officer at the time of certification. The court does not agree. Consul Francina's certificate is identical in form to that of Counselor Phillips', with seal and ribbon affixed. The fact that this certificate was generated later, at petitioner's insistence, after Landsidle's declaration, does not rob it of the presumption that it is valid, especially since the English translation, which the magistrate judge relied on most heavily, was certified from the first instance by "the principal consular officer of the United States in Peru."

**CONCLUSION**

For the reasons stated above, the court finds that the magistrate judge had jurisdiction over Petitioner Smith's extradition; that parricide is within the Treaty; and that there was sufficient evidence warranting the magistrate judge's determination of probable cause to believe that Smith was guilty of the offense charged. Furthermore, to the extent that this court has authority to review the procedural aspects of an extradition request and hearing, this court finds that there were no meaningful irregularities or defects that would call the validity or constitutionality of Petitioner Smith's extradition into question. Therefore, the instant petition for a writ of habeas corpus will be denied. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM TRICKETT SMITH, II,**<br>**Petitioner** | : | **No. 3:09cv1796** |
| **v.** | : | **(Judge Munley)** |
| **MICHAEL J. REGAN, UNITED**<br>**STATES MARSHAL, MIDDLE**<br>**DISTRICT OF PENNSYLVANIA,**<br>**Respondent** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

   **AND NOW**, to wit, this 22nd day of October 2009, the instant petition for a writ of habeas corpus (Doc. 1) is hereby **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.


                                        **BY THE COURT:**


                                        **s/ James M. Munley**

                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**